E-Filed 10/13/15

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA FOR THE USE OF SAN BENITO SUPPLY,<br><br>Plaintiff,<br><br>v.<br><br>KISAQ-RQ 8A 2 JV, et al.,<br><br>Defendants. | Case No. 13-cv-00469-HRL<br><br>**ORDER ON FRAZIER MASONRY COMPANY'S MOTION FOR THE AWARD OF ATTORNEY FEES AND EXPERT WITNESS FEES**<br><br>Re: Dkt. No. 134 |

## BACKGROUND

The Army Corps of Engineers ("ACOE") contracted with KISAQ-RZ 8A 2 JV ("KISAQ") for KISAQ to design and build a vehicle maintenance building at Fort Hunter Liggett. KISAQ contracted with Frazier Masonry Company ("Frazier") for Frazier to do all the concrete work. Frazier hired San Benito Supply ("SBS") to provide, along with certain other goods, the various types of ready-mixed concrete that the job required, including a heavy-duty 6,000 psi concrete. There was no dispute that the "6000 psi" concrete eventually mixed and supplied by SBS never did cure to the required compressive strength of 6,000 psi. At substantial cost, Frazier had to tear out the nonconforming concrete and replace it. This lawsuit was over why the SBS-supplied 6,000 psi concrete did not measure up, and whether SBS or Frazier would bear the cost of that failure.

Seeking payment of unpaid invoices for concrete and other materials, SBS sued Frazier for breach of contract. Frazier counterclaimed for breach of contract to recover the costs of the removal and replacement of the bad concrete and answered it was entitled to withhold payment of the invoices until the counterclaim was decided.

Following a nine-day bench trial, the court found for Frazier on its counterclaim and awarded all of the costs it had claimed for the removal and replacement job. The court rejected SBS's breach of contract claim but did offset the unpaid SBS invoices for conforming goods against Frazier's recovery. The total of the SBS invoices nearly equaled the total of Frazier's damages, and Frazier's net recovery was a modest $9,073.

Frazier now moves for an award of attorney fees and expert fees.

## DISCUSSION

### I. AWARD OF ATTORNEY FEES

In California, each party to a lawsuit must ordinarily pay its own attorney fees. *Trope v. Katz*, 11 Cal. 4th 274, 278 (1995); Cal. Civ. Proc. Code § 1021. However, attorney fees are recoverable as costs when authorized by statute, by contract, or by law. Cal. Civ. Proc. Code § 1033.5(a)(10). When so authorized, they are recoverable as a matter of right by the prevailing party in the action. Cal. Civ. Proc. Code § 1032(b). Frazier claims entitlement to attorney fees under a contract.

Under California Civil Code § 1717, three elements must be met for an award of attorney fees under a contract: (1) the party claiming such fees must have prevailed on the contract; (2) there must have been a contractual provision for such fees; and (3) the attorney fees must be reasonable. Each element will be addressed in turn.

#### A. Prevailing Party

In California, the definition of a "'[p]revailing party' includes the party with a net monetary recovery, . . . [including] a defendant as against those plaintiffs who do not recover any relief against that defendant." Cal Civ. Proc. Code § 1032(a)(4). Moreover, "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." Cal. Civ. Code § 1717(b)(1).

Here, Frazier proved its breach of contract claim and recovered all of the damages that it

2

sought, a sum of nearly $300,000. In contrast, SBS did not prove its breach of contract claim, and only received an offset for unpaid invoices that were never disputed. In short, Frazier got everything it wanted and SBS got nothing but what everyone had agreed from the outset it was due. Frazier won. SBS lost. Frazier is the prevailing party.

Alternatively, SBS argues that Frazier's $9,073 recovery is so small that the court should count it as a loss. That's nonsense. Its recovery was several hundreds of thousands of dollars, and the fact that an offset trimmed the number way down does not trump the conclusion that Frazier was the prevailing party.

### B. Contractual Provision for Attorney Fees

SBS alleged in its Complaint, in its proposed Amended Complaint, in various other filings, and in its closing argument that SBS's form Credit Application, which was filled out and signed by a Frazier representative, was one of the several documents that, taken together, governed the contractual relationship between SBS and Frazier. The Credit Application includes a clause entitling SBS to attorney fees in event of a dispute with Frazier, and SBS was clear that, if it prevailed, it would want attorney fees. The fee provision in the Credit Application provides: "I agree to pay attorney fees and costs that are incurred corresponding to collection of this account whether or not suit is instituted." SBS's action was for the collection of Frazier's account and was therefore based upon the Credit Application. California Civil Code § 1717 provides that "[w]here a contract provides for attorney fees . . . that provision shall be construed as applying to the entire contract[.]" Accordingly, whether or not the specific provision in the contract was in play or not, an attorney-fees provision will apply to the entire contract such that, if a breach of any provision occurs, the attorney-fees provision affords recovery to the prevailing party of its attorney fees. SBS does not dispute that the Credit Application supports Frazier's right to claim attorney fees based on a contract.[1]

---

[1] Frazier also argues that SBS's Weighmaster Certificates, which were apparently created each time an SBS truck was filled at the batch plant and dispatched to the job site, likewise had a provision for attorney fees. SBS does not seem to dispute that assertion. In any event, the court feels it is not necessary to examine the Weighmaster argument because the Credit Application is sufficient by itself. Frazier also cites in support of an attorney fees award the contract between Frazier and KISAQ. SBS was not a signatory to that contract, but Frazier's argument, which does not need to be considered on the attorney fees issue, raises an interesting question that will be

3

### C. Reasonableness of Attorney Fees

Frazier's motion for attorney fees, filed on May 8, 2015, showed that, from the start through April 30, 2015, its attorneys spent 2,759.6 hours on this matter and charged Frazier $889,407.50. In a supplemental submission, filed on August 31, Frazier's attorneys requested an additional $77,682.50 for 227.9 hours of work performed from May 1st through August 31, 2015. Total: $967,090.00.

In support of the motion the court received and reviewed (1) declarations, (2) the lawyer's invoices to Frazier, and (3) a complete set of itemized attorney billings showing dates, timekeepers' initials, time in tenths of an hour increments, and descriptions of the services.

Frazier's attorneys billed by the hour at rates agreed to by Frazier, rates that the attorneys declared were their usual and customary rates. The court will consider whether the rates and the hours billed at those rates were reasonable, and will also review the complexity of the litigation, the skill of the attorneys, and the success of their efforts. *Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977); *Stokus v. Marsh*, 217 Cal. App. 3d 647, 657 (1990). The reasonableness of the hours spent is determined by a reasoned judgment of the time that may be conscionably billed, not by the least time in which a task might theoretically have been done. *Norman v. Housing Auth.*, 836 F.2d 1292, 1306 (11th Cir. 1988). As the Supreme Court of California affirmed in *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000), § 1717 permits recovery of "hours reasonably expended multiplied by the reasonable hourly rate."

Frazier has been represented by the lawyers of Case, Ibrahim & Clauss, LLP ("CIC"), an Irvine-based boutique firm specializing in construction and real estate law. It has three partners (Messrs. Case, Ibrahim and Clauss), one associate and one legal assistant. Each partner has over 25 years' experience. Mr. Ibrahim, who did the lion's share of the work on this case, has since 1988 specialized in construction and real estate litigation. Mr. Ibrahim appeared by himself to try this case, unaccompanied by an associate or a paralegal. He was superbly prepared, with a near encyclopedic knowledge of the hundreds of trial exhibits and the uncanny ability to immediately put his finger on the deposition testimony or the document that would impeach an adverse witness

---

considered later in the court's discussion about expert fees.

4

on the stand. He displayed excellent litigation skills and comported himself as a consummate professional.[2] With respect to the present motion, the court fully accepts his declaration attesting to the accuracy of the time sheets and other documentation offered in support of the fees request.

The normal and customary hourly rates that CIC charged for its three partners, rates which increased over the years as this matter was litigated, began at $300 and eventually progressed to $415. CIC billed a law clerk at $125 and its paralegal at $120. Its sole associate was billed at $275. Based on Mr. Ibrahim's declarations, as well as supporting declarations from other attorneys knowledgeable about prevailing rates charged by lawyers with comparable experience and practice specialties in the Northern District of California, the court concludes that the hourly rates charged were reasonable. In fact, the declarations filed by other attorneys suggest that CIC's rates are actually below market, a suggestion that comports with this court's own understanding of prevailing rates. In any event, SBS does not challenge the hourly rates charged by CIC.

What SBS does object to is the number of hours CIC invested in the case. The court will later address SBS's challenges to the time spent on specific tasks. First, however, it examines why a contractual dispute over concrete, where each side sued the other for the principal amount of about $300,000, could wind up costing Frazier almost a million dollars in attorney fees (and still counting).

There was a lot to deal with here. Concrete is complicated. Its chemistry and physical properties are complex. So is mix design and mix qualification. Testing protocols are intricate. Entrapped air versus entrained air? Was the compressive failure of the putative 6,000 psi concrete due to faulty mix design? Did SBS batch the mix correctly? Or, did the failure stem from how Frazier placed and finished the concrete? Furthermore, SBS set out to excuse its failure to provide conforming 6,000 psi concrete by launching a full throated campaign to try to convince the court that Frazier, KISAQ, the ACOE, the project structural engineer, and the testing lab all came up short in fulfilling their contractual obligations to one another (but not to SBS), and that, if they all had done what they should have, someone would have caught SBS's multiple missteps before it

---

[2] In fairness, the court also notes that SBS's trial counsel was a well prepared and very able litigator.

was too late. Throughout the case, and especially during trial, SBS focused extraordinary time and attention on this defensive theme, and Frazier had to spend proportional time and attention confronting it. Also, there was no integrated contract between Frazier and SBS, and each disagreed on which documents (and oral agreements, if any) comprised the "contract" between them. To make things even more confusing, SBS changed its mind midway about what was the "contract." This what-was-the-contract issue took time and attention right up through closing argument.

This was a hard fought case. SBS took 12 depositions, and Frazier took 8. The deposition transcripts took up two bankers' boxes. SBS and Frazier obtained many thousands of documents from the parties as well as from numerous third-party suppliers and others, and the lawyers on each side of this case clearly had reviewed them all and were prepared to use them effectively at trial. Hundreds of documents became trial exhibits, and many were referred to again and again. Four experts testified. Obviously, both sides were determined to spend the money needed to vigorously advance their claims and their defenses.

SBS argues some of the legal services CIC performed were unnecessary or irrelevant, or that the time was padded. The court will address these arguments now.

First, SBS argues that CIC should not recover the approximately $15,000 it charged for dealing with the issue of potential delay or liquidated damages that KISAQ could have imposed on Frazier on account of the bad concrete having to be removed and replaced. If KISAQ had imposed such charges on Frazier, Frazier would have added them to its claim against SBS. KISAQ decided early on not to impose its own delay costs on Frazier, but that still left the ACOE, who could have sanctioned KISAQ, who then would have had to pass the sanctions down to Frazier, thus creating a conflict because CIC was representing both Frazier and KISAQ. A long time went by and the ACOE kept dithering about what it would do. As CIC explains it to the court, the issue dragged on unresolved to the point that CIC concluded it had a growing conflict of interest in continuing to represent both Frazier and KISAQ. Thus, it prepared a motion to withdraw as counsel for KISAQ. Before it was filed, however, the ACOE announced it would not impose delay or liquidated damages on KISAQ, and the issue was put to rest. The court finds the hours spent on "delay

damages" work were at the time rendered reasonably expended, and billed at reasonable rates, by prudent lawyers protecting their clients' interests.

Second, SBS argues that CIC did not need to deploy *both* Messrs. Ibrahim and Case to prepare for and attend the mediation and that the amount charged for their services in that endeavor should be halved. However, CIC points out that Mr. Case was the one who knew the client best and had been almost exclusively the only CIC lawyer who had worked on the Fort Hunter Liggett project issues (including the stubborn failure of the 6000 psi concrete to cure to the required strength) prior to litigation. Mr. Ibrahim took up the litigation for Frazier and knew the legal issues, the discovery, and the litigation considerations best. The court does not see any redundancy here. Each attorney brought unique knowledge and experiences to the table, and both of them provided value to their clients and to the mediation process.

SBS also objects to the entries on CIC bills showing .2 hours for either sending or receiving an e-mail. Its argument is that CIC has a .2 hour minimum for any event billed, and that it must have billed the minimum even if the e-mail only took .1 hour. First of all, the argument is speculative. Second, it is rare that the sending or receiving of even a brief e-mail, or any other standalone task, can thoughtfully be accomplished in less than 6 minutes. CIC assures the court that it does not abuse the .2 hour minimum (which Frazier had agreed to), and often folds in several small tasks (a one line e-mail, for example) with other, more time-consuming tasks on the case. SBS fails to persuade the court it should deduct half of the total charges for e-mails billed for .2 hours.

The CIC billings showed 24.3 hours ($8,754.50) for researching and preparing jury instructions, and SBS says those fees should be disallowed because the case was tried to the court. True, it was a bench trial, but a jury had been demanded early on, and it was not until soon before the pretrial conference that all parties stipulated to waive a jury. Most of the legal work on jury instructions was done by CIC before the waiver, and the court will not penalize CIC for working on jury instructions prior to the eve of pretrial. Also, CIC explains that, even after the jury waiver, its lawyers continued to look to California's form jury instructions and their supporting authorities for guidance on the hotly disputed issues of contract interpretation. That seems perfectly

7

reasonable.

CIC charged Frazier $4,440.50 to review documents from what the parties referred to as the *Mountain Cascade* case. SBS had been defendant in this prior state court suit which, like the present one, concerned SBS's failure to supply concrete that met the required compressive strength. In *Mountain Cascade* SBS cross-complained for indemnity against the project inspector on the theory that the inspector should have caught SBS's miscalculations. If that theory sounds familiar, it should. In the state case SBS argued it was a third-party beneficiary of the contract between the project inspector and the general contractor. That argument went nowhere, and the Superior Court's dismissal of the indemnity claim was affirmed on appeal. In the present case, SBS adopted the exact same theory of defense, but this time couched it in terms of causation rather than third-party-beneficiary. It would be reasonable for attorneys at CIC to expend time reviewing the *Mountain Cascade* documents to gain insight into SBS's strategic thinking and, in turn, to shape their own strategy.

The rest of SBS's objections are similarly unpersuasive. CIC did not charge for services that it redacted in the billing sheets. Its charges for preparing trial subpoenas for SBS employees were incurred before the parties stipulated to produce employees without subpoenas. The time spent communicating with potential experts is certainly appropriate and reasonable. The time invested in a potential summary judgment motion, even though the ultimate decision was to not file it, is likewise both reasonable and recoverable. It is not necessary for every CIC attorney who worked on the case to submit a declaration. Mr. Ibrahim's declaration sufficiently covers that ground. Finally, reasonable attorney fees charged on the matter even though incurred prior to the commencement of litigation are recoverable. *See Grossman v. Park Fort Wash. Ass'n,* 212 Cal. App. 4th 1128, 1134 (2012).

In summary, the court concludes that the hourly rates, services provided, and time spent by CIC on this matter are reasonable. Frazier is entitled to an award of attorney fees, through August 31, 2015, of $967,090.00.

II. **AWARD OF EXPERT WITNESS FEES**

Ordinarily, a prevailing party does not recover fees paid to its expert witnesses. *Cataphora*

*Inc. v. Parker*, No. C09-5749 BZ, 2012 WL 174817 (N.D. Cal., Jan. 20, 2012). The only exception that might apply in this case is if the parties have contractually agreed that expert fees are recoverable. Frazier points out that its contract with KISAQ entitles the prevailing party in any dispute between them to "…recover reasonable attorney fees, costs, charges and expenses expanded [*sic*] or incurred therein, *including expert fees and costs*." This is Frazier's authority for recovery of expert fees from SBS. True, SBS was not a signatory to the Frazier-KISAQ contract, but Frazier correctly argues that even a nonsignatory may under the right circumstances be entitled to enjoy the benefit (or suffer the detriment) of contract language allowing recovery of fees (including expert fees, if the language provides for them). California Civil Code § 1717 mandates a mutuality of remedy for fee claims under contractual provisions. Also, California courts interpret § 1717 "…to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney fees should he prevail in enforcing the contractual obligation against the defendant." *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 128 (1979). That same rationale would apply to expert fees as well.

It is also true that an action "on a contract" is broadly construed to include an action or cause of action that "…arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement." *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc*., 211 Cal. App. 4th 230, 242 (2012). So, were the right circumstances present here to support Frazier's entitlement to expert fees?

Frazier bases its argument on SBS's reliance on the Frazier-KISAQ contract to establish its defense to Frazier's claim for breach of contract. As the court has noted many times before, SBS tried to avoid liability for failing to provide conforming concrete by shifting the blame to Frazier, KISAQ, and others for not living up to their contractual obligations. It especially focused on Frazier's contractual obligations to KISAQ. Of course, none of those contractual obligations were to SBS, so SBS resorted to a causation argument: if Frazier and the others had done their jobs right, the problem with SBS's mix design would have been discovered and then corrected before it was too late. This looks like a third-party beneficiary argument, and that means – says Frazier –

9

that SBS would have been entitled to expert fees if it had won and therefore Frazier is entitled to them when SBS lost. The court does not agree.

SBS's suit against Frazier was over unpaid invoices. That suit was based on a claimed breach of the contract between SBS and Frazier. SBS did not bring a claim on the Frazier-KISAQ contract. Frazier's counterclaim is likewise based on a breach by SBS of the SBS-Frazier contract. There is no language in the Frazier-KISAQ contract that suggests SBS was a third-party beneficiary. And SBS specifically disclaimed that it was a third-party beneficiary of the Frazier-KISAQ contract. Although its "causation" argument, if successful, would have gotten SBS the outcome it wanted (a defense against Frazier's counterclaim), it was not an argument based on SBS being a third-party beneficiary and it was not based in somehow enforcing the Frazier-KISAQ contract in its favor.

The court believes that the reciprocal obligation of § 1717 applies to contract-based causes of action, and that the contract with the language for fees to the prevailing party has to be the contract which is the *subject* of the action. Here, in contrast, the Frazier-KISAQ contract was not the subject of the action. Instead, it was being used by SBS to create a defense to a claim based on its breach of the Frazier-SBS contract. Putting it a different way, the court believes that if, hypothetically, SBS's "causation" defense had successfully defeated the Frazier counterclaim, SBS would *not* have been entitled to recover its expert fees by virtue of the language in the Frazier-KISAQ contract. *See Brown Bark III, L.P. v. Haver,* 219 Cal. App. 4th 808, 814-15 (2013); *In re Bennett,* 298 F.3d 1059, 1071 (9th Cir. 2002).

Frazier's request for an award of expert fees in the amount of $142,815.04 is denied.

SO ORDERED

Dated: 10/13/15

HOWARD R. LLOYD
United States Magistrate Judge