E-Filed 11/16/15

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA FOR THE USE OF SAN BENITO SUPPLY, <br> Plaintiff, <br> v. <br> KISAQ-RQ 8A 2 JV, et al., <br> Defendants. | Case No.  13-cv-00469-HRL <br><br> **ORDER MODIFYING COSTS TAXED BY CLERK** <br> Re: Dkt. No. 157 |

San Benito Supply ("SBS") sued Frazier Masonry Company ("Frazier") for breach of contract. SBS alleged Frazier had paid only some of the money that was owed after SBS supplied Frazier with concrete. Frazier counterclaimed that some of the concrete was defective, that it was entitled to recover the costs incurred when it removed and replaced the bad concrete, and that it was entitled to withhold payment until the counterclaim was decided. The court ultimately found for Frazier on its counterclaim and agreed Frazier had been entitled to withhold payment until the counterclaim was decided. The court offset Frazier's recovery with the money owed to SBS, and Frazier's net recovery was $9,073.

Frazier filed a bill of costs to request that the Clerk of Court tax SBS for $59,896.11 as costs. The Clerk, pursuant to Civil Local Rule 54-3, disallowed a portion of the costs billed by Frazier and taxed SBS for $36,427.12. SBS moves the court to review the costs taxed by the Clerk.

**Discussion**

SBS raises three arguments: (1) the Clerk should have excluded $3,326.09 worth of witness costs instead of $1,656.79 because witnesses Charles Benford ("Benford") and George Prascsak ("Prascsak") were often present at trial as corporate representatives rather than witnesses; (2) the Clerk should have excluded all $13,094.51 worth of claimed exemplification-and-copies

costs because Frazier has not adequately proven the other costs were necessary; and (3) SBS should have received "a net judgment of $13,581.44" and, therefore, SBS is the prevailing party and cannot be taxed for any amount. Frazier responds that: (1) Benford and Prascsak's travel expenses were necessary and compensable because Frazier could not predict when exactly it would call them to testify; (2) the exemplification-and-copies costs should be compensated because those costs were reasonably necessary to the prosecution of this case, and the burden of justifying the taxation of copy costs is low; (3) SBS's prevailing-party argument improperly and frivolously attempts to re-litigate issues the court already conclusively decided against SBS, and so SBS should be sanctioned; and (4) SBS, in violation of Civil Local Rule 54-2(b), failed to meet and confer with Frazier before it filed objections to the bill of costs, and so the motion for review of costs should be completely denied.

The court considers Frazier's meet-and-confer argument first because that argument may be dispositive of SBS's entire motion. Local Rule 54-2(b) requires a party to either meet and confer "in an effort to resolve disagreement about the taxable costs claimed in the bill" or else to make "a good faith effort to arrange such a conference." SBS asserts in its reply that counsel left a voice mail in a good-faith attempt to arrange for a meet-and-confer conference. Dkt. No. 165 at 6-7. The court is satisfied that SBS complied with Local Rule 54-2(b) and therefore the court shall consider the substantive merits of SBS's motion.

The court considers SBS's prevailing-party argument next. SBS admits in its reply that "the court already ruled" against this argument. Dkt. No. 165 at 6. And that is true. SBS argued in a previous motion that certain damages awarded by the court should not have been awarded, that the court should amend the judgment to favor SBS, and that SBS is the prevailing party. The court completely rejected that argument. Dkt. No. 155. SBS filed the same argument in this motion a few days later, but SBS claims it intended only to preserve the argument for appeal in the taxation-of-costs context "in an abundance of caution." Dkt. No. 165 at 6. SBS also argues this is not a frivolous and procedurally improper motion for reconsideration of settled issues because SBS does not actually move the court to reconsider them. Rather, SBS claims it would have sought leave to file a motion for reconsideration if SBS had actually wanted the court to reconsider

these issues. Dkt. No. 165 at 6. The court accepts SBS's concession that these settled issues should not be revisited at this time. The court shall not sanction SBS.

SBS has properly raised, however, the propriety of taxing exemplification-and-copies costs. The court may tax as costs "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" 28 USC § 1920(4). SBS's exemplification-and-copies argument includes three subsidiary arguments: (1) copy costs related to documents from *Mountain Cascade, Inc. v. San Benito Supply*, Case No. CV 90106 (San Luis Obispo Super. Ct.), should be disallowed as unnecessary costs because those documents are all irrelevant to this case; (2) Frazier billed for the cost of providing trial exhibits to the Court, the Clerk, a witness, and each party, but Frazier did not "provide any information to support" that cost and so it should be disallowed; and (3) Frazier has provided no evidence that tends to show the necessity of any other copying expenses. Frazier responds: (1) the *Mountain Cascade* documents were very relevant to this case because in *Mountain Cascade* SBS faced similar allegations and raised similar legal theories; (2) even though "[i]t is unclear" why the company Frazier hired to create copies of trial exhibits billed Frazier for thirty binders, given that only twenty binders were necessary, it is clear that only the five necessary sets of exhibit copies were created; and (3) the burden of justifying copy costs is not "a high one" and Frazier has met its low burden of proof with respect to each copying fee.

The *Mountain Cascade* documents were relevant to this case. The court takes judicial notice of the related California Court of Appeals decision filed by Frazier as Exhibit 5. *San Benito Supply v. Kleinfelder West, Inc.*, 2d Civil No. B225302, 2011 WL 2848148 (June 29, 2011); Fed. R. Evid. 201(a)(2). That decision verifies SBS delivered defectively weak concrete to Mountain Cascade, a general contractor, and SBS defended against Mountain Cascade's responsive lawsuit with a cross-complaint for equitable indemnity against the company which had been separately hired to test whether SBS's concrete was defective. *Kleinfelder*, 2011 WL 2848148 at 1. SBS argued the testing company's contract created a duty for the testing company to protect SBS, a third-party to that contract, and therefore the testing company should indemnify SBS. *Id.* at 4. SBS did not raise the same argument in this case, but SBS did raise a similar causation defense

3

against Frazier's counter-claim: other parties failed in their contractual obligations to prevent the use of defective concrete, SBS argued here, and therefore SBS did not truly cause the damages that resulted from its delivery of defective concrete. That defense has obvious similarity to SBS's *Mountain Cascade* counter-claim, even though in this case SBS styled their theory as a causation defense rather than an equitable indemnification claim. The court is satisfied that it was reasonably necessary for Frazier to obtain copies of documents from the *Mountain Cascade* case in order to understand and defeat SBS's defense in this case. The full costs of procuring *Mountain Cascade* document copies, $2,356.13, shall be taxed against SBS.

The court partially agrees with SBS's claim that Frazier has not accounted for costs related to the provision of exhibit copies, but only with respect to a small portion of those costs. SBS asserts that it received four binders of exhibits from Frazier. Dkt. No. 157 at 8. The court, likewise, received four binders containing the proposed trial exhibits. It stands to reason that the five sets of exhibit binders provided by Frazier were, at four binders per set of exhibits, spread across twenty total binders. Frazier admits uncertainty as to why the Advanced Discovery company billed Frazier for thirty binders when it created five sets of exhibit binders. Dkt. No. 159 at 6-7. Still, the invoice clearly asserts that only five sets of exhibit copies were printed, numbered, and assembled in binders along with index tabs. Dkt. No. 159 at 40. SBS argues the scanning costs on this invoice do not appear to relate to the creation of these five exhibit copy sets and that the invoiced costs are facially unreasonable. Dkt. No. 165 at 4-5. The court disagrees. The invoice clearly describes the costs of scanning, printing, numbering, and assembling the five sets of exhibit copies. Those costs were reasonable and necessary in this litigation, and the court does not believe that approximately $3,500 is a facially unreasonable price for the labor and materials that went into scanning, printing, organizing, and indexing several thousands of pages within twenty large binders.

The court shall exclude only one third of the costs billed for binders, $189, because it appears likely that only twenty binders were actually used to hold the exhibit copies, and Frazier was not able to explain why it was instead billed for thirty binders.

The court next addresses whether Frazier has adequately shown its other copy costs were

4

reasonably necessary to the prosecution of this case. Those other costs include printing and CD duplication fees invoiced by DIGICOPY, Inc., color printing fees invoiced by Advanced Discovery, and 26 months of in-house photocopying fees. Frazier argues that it need only "provide the best breakdown obtainable from retained records" to show copies were "made for this case for [Frazier's] attorneys and billed in the normal course with the documents coming in[.]" Dkt. No. 159 at 9 (quoting *Movitz v. First Nat. Bank of Chicago*, 982 F. Supp. 571, 577 (N.D. Ill. 1997) (internal citations omitted)). Frazier also cites the Tenth Circuit to argue its burden of proof here is not high. Dkt. No. 159 at 9 (citing *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1149 (2009)). The court is not bound by the cases Frazier cites, but the court's own research has not revealed contrary binding precedent.

The court is persuaded the DIGICOPY, Inc. invoice for $260.50 justifies the taxation of that cost against SBS. Civil Local Rule 54-3(d) allows the taxation of costs for copying formal discovery documents, and the DIGICOPY, Inc. invoices the creation of paper copies and a duplicate CD copy for "[d]ocuments produced by CMT[.]" Dkt. No. 133-5 at 11. The Advanced Discovery invoice for $214.65 also describes a taxable cost. Dkt. No. 133-5 at 13. Frazier asserts this invoice relates to trial exhibits that were incorporated by Advanced Discovery into the trial exhibit binders. Dkt. No. 159 at 7-8. The court is satisfied that this cost is therefore taxable against SBS as part of Frazier's necessary and reasonable trial exhibit copying costs.

The court does not believe, however, that Frazier's in-house photocopy costs should be taxed against SBS. The court does not agree with Frazier's argument that the prevailing party need only show the recorded costs of in-house copying in the course of a case. Frazier also argues that Civil Local Rule 54-3(d) provides for taxation of costs to reproduce government records, formal discovery documents, trial exhibits, and charts or other visual aids at trial. The court agrees with this statement of law, but is not persuaded by the conclusion that "the vast majority of Frazier's in-house copy costs" probably fall into those categories. Dkt. No. 159 at 10. The court is certain that some of Frazier's in-house copy fees would be compensable if Frazier had kept any record of what kinds of documents were being copied, but Frazier's records show only the costs of copying undescribed documents. The court lacks a non-speculative basis on which it might

5

properly tax SBS for any specific portion of these costs. The court therefore disallows taxation against SBS of Frazier's $6,790.24 worth of in-house copying fees.

Finally, the court addresses SBS's witness-fees argument. The prevailing party may recover witness fees under 28 USC § 1920(3), including $40 in attendance fees per day as well as the costs of travel and subsistence. 28 USC § 1821. Frazier appears to agree with SBS that taxation of witness costs is improper when a witness attends trial solely in his capacity as a corporate representative, but Frazier argues witness costs related to a day on which the witness did not testify are still appropriately taxed when it was reasonable and necessary for that witness to attend trial in his capacity as a witness on that day. Dkt. No. 159 at 3 (quoting *Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1442 (7th Cir. 1994)). The court has not found binding precedent which either adopts or rejects Frazier's rule, but the Seventh Circuit case Frazier relies upon has been cited with approval by the Ninth Circuit in a related context. *Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir. 1998) (citing *Haroco*, *supra*) (discussing whether 28 USC §§ 1821 and 1920 permitted the parties in that case to recover fees as their own witnesses). The court is persuaded witness attendance fees may be recovered if it was reasonable and necessary for the witness to attend trial in his capacity as a witness, even if the witness did not ultimately testify on that particular day.

Witnesses Benford and Prascsak both work in Las Vegas. Frazier needed to make their arrangements for travel to San Jose in advance and it was unclear how long it would take for each other witness in this case to testify. This meant that Frazier could not realistically limit the attendance of Benford and Prascsak solely and precisely to days upon which they would actually testify. The court therefore finds it was reasonable and necessary for Benford and Prascsak to travel to San Jose and attend trial for several days during the weeks in which they testified, even if they did not testify during every trial day they attended during those weeks.

Benford and Prascsak did not, however, testify at all when they attended the first week of trial. SBS claims it provided Frazier with fair notice that its case in chief would be brief and would include only one witness. Dkt. No. 165 at 2. Frazier does not dispute that claim, and SBS did in fact put on a brief case in chief that included the testimony of just one witness. Dkt. No.

174 at 54.  Frazier therefore had the ability to call its own witnesses to the stand throughout the first week of trial.  Frazier nevertheless declined to call either Benford or Prascsak as witnesses over the course of those four days.  Frazier argues it was necessary to bring Benford and Prascsak to the first week of trial in order to guard against the risk that SBS might totally fail to produce any of the witnesses Frazier actually intended to call.  Dkt. No. 159 at 4.  Frazier also asserts there was a "strong possibility" it would have called Benford and Prascsak in the first week if SBS's case in chief had included certain testimony.  Dkt. No. 159 at 4.  The court is not convinced it was reasonable or necessary for Benford or Prascsak to attend the first week of trial when Frazier had ample opportunity to call them to the stand for those four days but declined to do so.  The court therefore excludes the $2,353.18 worth of costs incurred when Benford and Prascsak attended the first week of trial.

The other costs billed for these witnesses, however, relate to brief trips in which they actually testified—Benford testified on November 14 and December 1, 2014, and Prascsak testified on November 18 and 19, 2014.  Attendance by Benford and Prascsak was reasonable and necessary during each day of those trips because it was not realistically possible for Frazier to precisely predict the days on which Benford or Prascsak would actually testify.  The court shall therefore tax SBS for the costs related to the other trips witnesses Benford and Prascsak made to San Jose.

### Conclusion

The court excludes $6,979.24 in exemplification-and-copies costs instead of $776.38 and excludes $2,353.18 in witness fees instead of $1,656.79.  This modification of the costs taxed by the Clerk reduces the net taxation against SBS by $6,899.25.  *See* Dkt. No. 156.  The court therefore taxes SBS for $29,527.87 in costs rather than $36,427.12.

**IT IS SO ORDERED.**

Dated: 11/16/15



_____
HOWARD R. LLOYD
United States Magistrate Judge